**Robert R. GIGLIO, Petitioner,**

v.

**CONSUMER PRODUCT SAFETY
COMMISSION, Respondent.**

No. 77–1249.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1978.

Decided March 31, 1978.

Sanford A. Kowal, Boston, Mass., with whom Sallop, Kowal & Davis, Assoc., Boston, Mass., was on brief, for petitioner.

Charles R. McConachie, Chief, Consumer Affairs Section Antitrust Div., U. S. Dept. of Justice, Washington, D. C., with whom John H. Shenefield, Asst. Atty. Gen., Antitrust Div., Theodore J. Garrish, Gen. Counsel, U. S. Consumer Product Safety Commission, and Alan C. Shakin, Atty., Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On May 4, 1977, the Consumer Product Safety Commission promulgated a Rule establishing safety standards for matchbooks. 42 Fed.Reg. 22656 (May 4, 1977). The Rule was to be effective May 4, 1978, and has recently been reviewed by this court in *D. D. Bean & Sons Co. v. Consumer Product Safety Commission*, 574 F.2d 643 (1st Cir. 1978). Robert R. Giglio, who has invented what he describes as a child-resistant matchbook, petitions for review of the Rule under 15 U.S.C. § 2060(a) & (b), which provides,

"[A]ny person adversely affected by such rule, or any consumer or consumer organization, may file a petition with [an appropriate court of appeals] for judicial review of such rule. . . .

"If the petitioner applies to the court for leave to adduce additional data, views, or arguments and shows to the satisfaction of the court that such additional data, views, or arguments are material and that there were reasonable grounds for the petitioner's failure to adduce such data, views, or arguments in the proceeding before the Commission, the court may order the Commission to provide additional opportunity for the oral presentation of data, views, or arguments and for written submissions."

Petitioner first challenges the Commission's requirements that friction material be located only on the reverse of the matchbooks and that covers remain closed without ex-

ternal force. He maintains that there is insufficient evidence in the record to support the Commission's decision to impose these safety requirements. We find no merit in these contentions which we have dealt with and rejected in *D. D. Bean & Sons Co., supra.*

Petitioner also requests that we exercise our authority under § 2060(b) to remand to the Commission for consideration of his invention and possible modification or setting aside of its original rule in light thereof. The Commission's original proposed Rule called for a child-resistant matchbook design. 41 Fed.Reg. 14113–14 (April 1, 1976). However, after staff consideration of two of the more promising child-resistant designs, the Commission voted to drop the requirement. The critical vote took place on August 5, 1976, and the final rule was promulgated on May 4, 1977. Giglio claims that he invented his child-resistant matchbook in January, 1977. On March 14, 1977, he telegraphed the Commission requesting that his matchbook be considered in connection with matchbook safety standard proceedings. His telegram did not describe the matchbook except by reference to a patent office filing. The Commission's General Counsel replied on April 1, informing Giglio that his request was untimely since the Commission had completed rule-making with respect to child-resistance the previous summer. The Commission's Counsel did, nonetheless, request Giglio to forward a sample of his matchbook for testing. Just before the Commission's final vote in April, 1977, to promulgate the matchbook safety standard, Giglio sent another telegram claiming the superiority of his matchbook and urging the Commission to defer consideration. The General Counsel responded to this telegram, informing Giglio that he should petition the Commission to commence a proceeding to consider amending the final rule, as authorized by 15 U.S.C. § 2059. Such a proceeding would not interfere with promulgation of the final matchbook rule, and its scope would be largely within the Commission's control, subject to limited judicial review. *Id.,* § 2059(c), (d) & (e).

The reopening under § 2060 which petitioner now seeks would, unlike an amendment proceeding, hold up issuance of a final matchbook rule. To obtain such a reopening, a petitioner must first show that he has "additional data, views, or arguments" which are "material", and must further establish "reasonable grounds" for his failure to have adduced them previously before the Commission. Thereafter, the court "may order" a remand to the Commission. Congress has thus left the final decision on remanding to the court's discretion, recognizing, no doubt, that a petitioner's showing of novelty, materiality and past reasonableness will vary markedly from case to case, as will the impact of a remand upon the Commission's ability to carry out its assigned tasks and upon the public interest.

Petitioner here has made a very weak showing, at best, of diligence before the Commission. He says he invented his child-resistant cover in January, 1977. However, he waited two months before requesting the Commission to consider his invention and even then did not, as one would have expected, submit the details for consideration. His second telegram to the Commission, a few days before its final vote in April, 1977, was no more specific. While it is true that the Commission's General Counsel advised Giglio in April that the rule-making on child resistance had been completed the previous summer, we cannot be certain that had Giglio made a more timely and informative presentation, the Commission would have declined to reopen. Given the eleventh-hour timing, the Commission was entitled to expect that petitioner would act with a greater sense of urgency.

Petitioner also fails to make a persuasive showing that a remand will expose the Commission to genuinely new concepts not already largely encountered in the previous rule-making. Section 2060's requirements that the data, views, or argument be "additional" and "material" imply that they must have enough novelty and importance to warrant the dislocation that will accompany a reopening of the already completed rule-making. Petitioner's invention, briefly de-

scribed, is designed to fool children and mentally defective persons by placing a dummy striker where the real striker is usually located, and placing the real striker in disguised fashion, on the lip of the flap. The real striker's location there, in addition to its claimed capacity to fool children, purportedly has the beneficial feature of requiring the flap to be closed when a match is struck. This last safety feature is, however, achieved by the present Rule which requires that the friction material be located on the reverse side of the matchbook. With respect to the invention's asserted ability to fool children, the record reveals that the Commission staff rejected several proposals incorporating a dummy striker in the usual location of the friction material as likely to be "more confusing to adults than children." Moreover, several months before the Commission's August, 1976 vote against child-resistant features, the record contained proposals for camouflaged strikers, though the record does not reveal how much staff or Commission scrutiny these proposals received. The only similar camouflaged striker on which the staff commented involved a striker hidden under a flap. This was rejected because only very young children would be fooled and "the consumer will fold the protective flap back for the sake of convenience." On the basis of its past approach, the Commission and staff might be expected to reject petitioner's disguised striker as unlikely to fool children for very long. In any event, without saying that petitioner's design may not have arguable merit of its own, we think that it is not sufficiently different from concepts previously considered and rejected by the Commission as to make the prospective usefulness of a remand very plain.

Where, as here, a petitioner has been less than diligent before the commission and, in addition, the novelty and likely impact upon the Commission of the material he seeks to present are less than clear, we are not inclined to exercise our discretion in favor of a forced reopening that will disrupt the Commission's timing. Additional reasons militating against such a reopening are the respect due to the Commission's own preferences in a matter that Congress has chiefly committed to its hands; * the risk of further expense to matchbook makers who have retooled to comply with the Commissioner's present rule; and the public's interest in obtaining without further delay the protection afforded by promulgation of some kind of safety rule.

*The petition is denied.*

---

* We reject as entirely unsupported petitioner's assertion that the Commission refused to consider his belated submissions out of a desire not to foster privately developed, profit-making inventions.